UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Mark Steven Heilman, as trustee for the next of kin of Tyler Mark Heilman,<br><br>Plaintiff,<br><br>vs.<br><br>Todd Waldron, individually, and in his official capacity as an Investigator for the Le Sueur County Sheriff's Department; and Le Sueur County Sheriff's Department,<br><br>Defendants. | Civil No. 11-CV-01930 JRT/SER |

**ANSWER TO COMPLAINT**

COME NOW Defendants Todd Waldron, and LeSueur County Sheriff's Department, for their Answer to Plaintiff's Complaint, state and allege as follows:

1. Unless hereafter admitted, qualified or otherwise answered, these answering Defendants deny each and every thing, matter and particular alleged in Plaintiff's Complaint.

2. Defendants specifically deny Plaintiff has stated a cognizable claim for relief under 42 U.S.C. § 1983 or § 1988 and further deny decedent Tyler Mark Heilman sustained any deprivation of rights or constitutional injuries as alleged in Plaintiff's Complaint.

3.      Defendant Todd Waldron specifically denies he used excessive force, unreasonable force or unreasonably seized decedent as alleged in Plaintiff's Complaint and denies subjecting decedent to deprivations of his rights maliciously or by acting with reckless disregard for whether decedent's rights would be violated.

4.      Defendants affirmatively allege at all times material hereto, Investigator Waldron was performing discretionary acts in the scope of his duties with a good faith belief his conduct was lawful, constitutional, proper and pursuant to probable cause.

5.      Defendants affirmatively allege Plaintiff's actions against them are official capacity actions only and Investigator Waldron admits he was at all times material herein acting in his official capacity as an investigator for the Le Sueur County Sheriff's Department.

6.      Defendants affirmatively allege on July 20, 2008, Le Sueur County Sheriff's Department Investigator Todd Waldron was in Kasota, Minnesota to follow up on an investigation. He was driving a grey unmarked Dodge Durango. He was wearing blue jeans with a tucked-in yellow polo shirt, along with a holstered gun and badge which were clearly displayed on his hip. Investigator Waldron was not equipped with any other duty weapons. Around 3:30 p.m., while in his squad car, Investigator Waldron observed a car driving recklessly with several young occupants inside. Investigator Waldron drove down the block to continue observing the vehicle. He saw the vehicle continue to drive erratically and off the road. Investigator Waldron contacted dispatch and requested a Sheriff's Deputy respond to the reckless driver. As Investigator Waldron drove through the town, he encountered the same vehicle in another location. The vehicle was heading

straight toward the investigator. He notified dispatch of the plate number. Investigator Waldron continued to proceed to the apartment building where he was conducting the investigation of a different matter. When he arrived at the apartment building, he observed the same vehicle he previously saw driving recklessly. A male standing outside the vehicle raised his arms as if he were signaling to the officer. When Investigator Waldron saw the individual signal to him, he drove up to the car and stopped directly at the passenger side rear corner of the vehicle. He noted the license plate number was the same as the one he previously observed. Investigator Waldron exited his vehicle and approached the individual. Investigator Waldron advised the individual, later identified as Tyler Heilman, he witnessed his driving conduct and thought it was very reckless. Heilman looked at Investigator Waldron's gun and badge on his hip several times. When Investigator Waldron advised him about his driving conduct, Heilman responded the officer did not need to worry about that. Heilman denied being the driver of the vehicle when Investigator Waldron inquired. Heilman asked why the officer was following him and Investigator Waldron described the reckless driving he witnessed. Heilman commented he drove that way all the time. Investigator Waldron asked to see Heilman's driver's license. Heilman responded, "Don't f---ing worry about it," and began walking toward the apartment building. Investigator Waldron told Heilman he was not free to leave. Investigator Waldron walked toward Heilman and again asked Heilman for his driver's license. Heilman again refused and responded, "F--- that." Investigator Waldron took hold of Heilman's wrist to keep him from leaving. At that point, Heilman forcefully pulled away from Investigator Waldron and pivoted toward him. Investigator Waldron

told Heilman he was under arrest and ordered him to get on the ground. Heilman did not comply with the commands. Heilman again started to leave and Investigator Waldron engaged Heilman's right arm and attempted to put him in a wrist lock. Heilman pulled away. Investigator Waldron then grabbed onto Heilman and again informed Heilman he was under arrest. Heilman actively resisted and the two fell to the ground on the grass. For a moment, Investigator Waldron was in control and on top of Heilman. But then Heilman said, "Now I'm gonna get you m---er f---er." Investigator Waldron felt Heilman move from actively resisting to an offensive altercation. Heilman spun and got on top of Investigator Waldron and began striking Investigator Waldron's head, saying repeatedly "m---er f---er." Investigator Waldron had no control over Heilman. He was on his hands and knees while Heilman hit and punched Investigator Waldron's head. Investigator Waldron saw his duty weapon lying on the grass and immediately realized he needed to get the duty weapon under his control and away from anybody else that could potentially pick it up. His holster was also on the ground. Before he could reach the weapon, the officer felt squeezing around his neck. He continued to reach for the gun while he felt more squeezing around his neck. He began getting tired, it was difficult to breathe and he was becoming more and more terrified. He could no longer speak. Investigator Waldron feared for his life. Heilman stood over the officer with his stomach area in front of Investigator Waldron's head and bent over Investigator Waldron, while doing a choke hold. In the choke hold, Investigator Waldron attempted to reach his gun above his head toward Heilman's chest or stomach area and pulled the trigger. Heilman still had his arm around the officer's neck after the first shot and it was difficult for the officer to breathe.

Investigator Waldron was then able to look up and Heilman was directly in front of the officer. Investigator Waldron discharged his weapon approximately three more times toward Heilman's center mass. Investigator Waldron did not have a radio on his person so he returned to his squad car to radio for medical personnel and other officers. Investigator Waldron returned to Heilman and saw him lying on the ground. Investigator Waldron attempted to maintain control of the scene which had persons standing outside, confronting the officer. Heilman subsequently died as a result of his gunshot wounds; however, Plaintiff's claim Waldron did not render aid is false. Waldron radioed for an ambulance, checked Heilman's condition and directed bystanders to get towels or blankets to stop the bleeding, and assisted arriving officers including offering to assist with CPR, all while maintaining control of the scene.

7.     Defendants affirmatively allege the LeSueur County Sheriff's Department is not a separate entity subject to suit.

8.     Defendants affirmatively allege Plaintiff's claims are barred by the legal doctrines of qualified, statutory and official immunity.

9.     Defendants affirmatively allege Plaintiff's claims are barred by the public duty doctrine.

10.    Defendants affirmatively allege Plaintiff's Complaint fails to state a cause of action or claims upon which relief can be granted.

11.    Defendants are without facts sufficient to form a belief as to the truth of Plaintiff's alleged damages claim and, therefore, deny the same and demand strict proof thereof.

12. Defendants support Plaintiff's demand for a jury trial as set forth in Plaintiff's Complaint.

13. Defendants affirmatively allege the reasonableness of a particular use of force must be judged from the officer's perspective, not Plaintiff's or Plaintiff's witnesses' perspective, or based on 20/20 hindsight.

14. Defendants affirmatively allege any injuries or damages sustained by decedent or Plaintiff were caused by, due to and the result of the careless and negligent conduct on the part of decedent and that decedent's fault was greater than any fault of Defendants.

**WHEREFORE,** Defendants pray Plaintiff take nothing by this claim for relief herein and these answering Defendants be given judgment against Plaintiff, dismissing Plaintiff's cause of action with prejudice and, further, Defendants be given judgment for costs, disbursements and attorney's fees herein pursuant to 42 U.S.C. § 1988 and for such other relief as the Court may deem just and equitable.

IVERSON REUVERS

Dated:  August 4, 2011

By  Jon K. Iverson
    Jon K. Iverson, #146389
    Stephanie A. Angolkar, #388336
Attorneys for Defendants
9321 Ensign Avenue South
Bloomington, MN  55438
(952) 548-7200